[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 353 
The appellant, Earnest Ray Nix, was convicted of one count of trafficking in cocaine, a violation of § 13A-12-231(2), Ala. Code 1975, and two counts of unlawful distribution of cocaine, violations of § 13A-12-211, Ala. Code 1975. The trial court sentenced him, pursuant to the Habitual Felony Offender Act, § 13A-5-9(c), Ala. Code 1975, to concurrent sentences of life imprisonment without the possibility of parole for the trafficking conviction and two terms of life imprisonment for the unlawful distribution convictions. It also imposed a $50,000 fine for the trafficking conviction. See § 13A-12-231(2)a., Ala. Code 1975. The appellant filed a motion for a new trial, which the trial court summarily denied. This appeal followed.
 I.
The appellant argues that the trial court erroneously denied his request to dismiss his appointed counsel and to retain new counsel. On October 12, 1998, immediately before the appellant's trial was scheduled to begin, the appellant informed the trial court that he wished to dismiss his appointed counsel and to replace him with retained counsel. The trial court denied the motion, noting that the appellant's cases had been pending for a long time and that he had been in jail for some time. It further stated that appointed counsel was well qualified and was representing the appellant to the best of his ability. Additionally, the court stated that, because the appellant had waited to make his motion until the jury was on its way to the courtroom, his motion to dismiss his attorney was untimely. *Page 354 
The appellant argues that the trial court denied him his Sixth Amendment right to counsel by preventing him from replacing his court-appointed attorney with retained counsel. In Snell v.State 723 So.2d 105 (Ala.Cr.App. 1998), we stated:
 "While an indigent defendant may have the right to be represented by counsel, he has no absolute right to be represented by any particular counsel or by counsel of his choice. Briggs v. State, 549 So.2d 155 (Ala.Cr.App. 1989). The essential aim of the Sixth Amendment is to guarantee an effective advocate, not counsel preferred by the defendant. Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The Sixth Amendment does not guarantee a defendant a meaningful relationship, rapport, or even confidence in court-appointed counsel. Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); Siers v. Ryan, 773 F.2d 37 (3d Cir. 1984), cert. denied, 490 U.S. 1025, 109 S.Ct. 1758, 104 L.Ed.2d 194 (1989).
 "The decision to substitute or to remove court-appointed counsel and to appoint new counsel for an accused rests within the sound discretion of the trial court. Boldin v. State, 585 So.2d 218 (Ala.Cr.App. 1991); Cox v. State, 489 So.2d 612 (Ala.Cr.App. 1985). In order to prevail on a motion for substitution of counsel, the accused must show a demonstrated conflict of interest or the existence of an irreconcilable conflict so great that it has resulted in a total lack of communication that will prevent the preparation of an adequate defense. Boldin v. State; Cox v. State."
723 So.2d at 107. Although the appellant contends that his court-appointed attorney was not experienced and did not adequately represent him, he does not allege any specific facts to support his claims. He has not established that there was an irreconcilable conflict between him and his attorney so that his attorney was unable to defend him professionally and adequately. Rather, the record indicates, as the trial court specifically noted, that the appellant was ably represented by his appointed counsel. The record contains several motions that counsel had prepared and filed in the two and one-half months that passed between his appointment on July 30, 1998, and the date trial commenced. Where, as here, the record indicates that counsel was well prepared and represented the appellant ably and skillfully, the trial court's refusal to allow a substitution of the appellant's counsel is not an abuse of discretion. Burrell v.State, 689 So.2d 992 (Ala.Cr.App. 1996). Furthermore, when a defendant seeks to discharge his court-appointed counsel on the day his trial is scheduled to begin, the trial court does not abuse its discretion in denying the defendant's request and ordering the appellant to proceed to trial with his court-appointed counsel. Reynolds v. State, 539 So.2d 428
(Ala.Cr.App. 1988). The appellant maintains on appeal that he did not move to discharge his appointed counsel to intentionally delay his trial. The record indicates that the appellant was initially represented by retained counsel when he was arraigned on August 15, 1997. However, when the appellant's cases were consolidated for trial with his codefendant's cases, the appellant's retained counsel withdrew from his case because of a potential conflict of interest. On July 30, 1998, the trial court found that the appellant was indigent and appointed counsel to represent him. Approximately two and one-half months passed between the appointment of counsel and the trial, which began on October 12, 1998. Therefore, the appellant had sufficient time before his trial was scheduled to begin to complain about his appointed counsel and to urge the court to allow him to replace his appointed counsel with retained counsel. The appellant has not offered any justification for not raising his complaints about his appointed counsel during the two and one-half months that had elapsed between the date counsel was appointed and the trial date. *Page 355 
 "`The right to choose counsel is a shield and part of an accused's due process rights. It should not be used as a sword with the purpose of obstructing the orderly procedure of the courts or to interfere with the fair administration of justice. . . . Under these conditions, we have no difficulty in holding that the court did not abuse its discretion in denying the motion for a continuance and proceeding to trial with appointed counsel who was already prepared to try the case.'"
Reynolds, 539 So.2d at 429 (quoting Richardson v. State,476 So.2d 1247, 1248 (Ala.Cr.App. 1985)). Thus, the trial court properly denied the appellant's request to replace his appointed counsel with retained counsel.
 II.
The appellant also argues that the trial court erroneously admitted three bags of cocaine into evidence because the State allegedly did not prove the chain of custody for the cocaine. He contends that there are several "missing links" in the chain of custody as to State's Exhibits 1, 2, and 3. Specifically, he argues that the State's evidence did not sufficiently show whether Officer Bemis or his partner, Officer Treadaway, actually delivered State's Exhibit 3 to the toxicologist for testing. He also argues that, although Officer Bemis testified that Officer Treadaway delivered State's Exhibits 1 and 2 to the toxicologist, there was a break in the chain of custody because Officer Treadaway did not testify to that fact himself. Additionally, he claims that the State did not establish who retrieved the cocaine from the lab once the toxicologist had completed the testing process. For these reasons, the appellant argues that the State did not prove a sufficient chain of custody for the admission of the cocaine into evidence.
To prove a chain of custody, the State must sufficiently establish (1) the receipt of the evidence; (2) the ultimate disposition of the evidence; and (3) the safeguarding and handling of the evidence between receipt and disposition. Ex parte Holton,590 So.2d 918 (Ala. 1991) (quoting Imwinklereid, TheIdentification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973)). The reason for requiring that "the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence." Jones v. State, 616 So.2d 949,951 (Ala.Cr.App. 1993) (citations omitted). "[E]vidence that an item has been sealed is adequate circumstantial evidence to establish the handling and safeguarding of the item." Lane v.State, 644 So.2d 1318, 1321 (Ala.Cr.App. 1994). Officer Bemis testified that he purchased the three bags of cocaine from the appellant, that he sealed each bag, and that he taped and initialed each bag before placing them in his locker. He further stated that he personally delivered State's Exhibit 3 to Danny Kirkpatrick, the state toxicologist who tested the cocaine, and that he gave State's Exhibits 1 and 2 to Officer Treadaway, who delivered those bags to Kirkpatrick for testing. Danny Kirkpatrick testified that, when he received the packages from Officer Bemis and Officer Treadaway, they were sealed and labeled. He stated that, after testing the substance in the bags, he sealed the bags and placed them in his locker until they were picked up by the police department.
Although Officer Treadaway did not testify regarding the handling of the packages, the State offered sufficient evidence to show that the cocaine was delivered to the state toxicologist in the same condition it was in when it was retrieved from the scene by Officer Bemis. At most, the absence of Officer Treadaway's testimony constitutes a weak link in the chain of custody, which goes to the weight and credibility of the evidence rather than its admissibility. Smith v. State, 677 So.2d 1240 (Ala.Cr.App. 1995); Knight v. State, 622 So.2d 426, 430 (Ala.Cr.App. 1992). *Page 356 
The appellant also complains that the absence of testimony regarding who picked up the bags of cocaine from the toxicology lab after they had been tested constituted a break in the chain of the custody. This claim is without merit. "`[T]he law is concerned with tracing the integrity of the substance only up through the completion of the analysis.'" Land v. State,678 So.2d 201, 213 (Ala.Cr.App. 1995), aff'd, 678 So.2d 224 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996) (citations omitted). Based on Officer Bemis's and Danny Kirkpatrick's testimony, the State sufficiently proved the chain of custody of the cocaine through the completion of the analysis.
Furthermore, even if there had been a break in the chain of custody, Officer Bemis identified State's Exhibits 1, 2, and 3 as the evidence he obtained during the drug sales. Therefore, the evidence would be admissible under § 12-21-13, Ala. Code 1975, which specifically provides:
 "Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
The appellant also argues that because Officer Bemis did not testify that the exhibits were in the "same or substantially same" condition as when he submitted them to the toxicologist, the cocaine should not have been admitted. We disagree. Although Officer Bemis did not use the specific words "same or substantially same," he did testify that the exhibits were the same as those he turned over to the toxicologist. The State "`need only prove to a reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.'" Turner v.State, 610 So.2d 1198, 1200 (Ala.Cr.App. 1992) (quoting Sommerv. State, 489 So.2d 643, 645 (Ala.Cr.App. 1986)). The State satisfied this requirement. Therefore, the trial court properly admitted the cocaine into evidence.
Moreover, any error in the admission of the cocaine into evidence was harmless. Officer Bemis and Danny Kirkpatrick testified extensively about the cocaine during the State's case-in-chief. However, the State did not offer the cocaine itself into evidence until the end of its case-in-chief. Therefore, the admission of the cocaine was merely cumulative to the testimony of Officer Bemis and Danny Kirkpatrick. SeeWilkerson v. State, 686 So.2d 1266 (Ala.Cr.App. 1996); Reesev. City of Dothan, 642 So.2d 511 (Ala.Cr.App. 1993).
 III.
The appellant argues that the trial court improperly enhanced his sentence pursuant to the Habitual Felony Offender Act. Specifically, he claims that the State did not give him notice of its intent to use his prior felony convictions to enhance his sentence and that it did not sufficiently prove the prior convictions for purposes of enhancing his sentence. However, the record does not reflect that the appellant objected to the use of the prior convictions on any ground at the sentencing hearing or in any post-trial motions. Because the appellant did not present these challenges to the use of his prior felony convictions for sentence-enhancement purposes to the trial court, they are not preserved for our review. See Nichols v. State, 629 So.2d 51
(Ala.Cr.App. 1993), and Matthews v. State, 671 So.2d 146
(Ala.Cr.App. 1995) (holding that issues concerning improper notice of intent to use prior felony convictions for sentence-enhancement purposes and improper proof of prior felony convictions for *Page 357 
sentence-enhancement purposes must first be raised at trial to be preserved for appellate review).
Moreover, the record reflects that the appellant openly admitted to the trial court that he had pled guilty to three of the four prior felony convictions. "The admission by a defendant of a prior conviction constitutes proper proof to enhance that defendant's sentence under the Habitual Offender Act." Daniel v.State, 623 So.2d 438, 441 (Ala.Cr.App. 1993). Therefore, the trial court properly enhanced the appellant's sentence pursuant to the Habitual Felony Offender Act.
 IV.
The appellant further argues that the sentences imposed upon him violated his Eighth Amendment right against cruel and unusual punishment. Specifically, he argues his sentences of life imprisonment and life imprisonment without the possibility of parole were disproportionate to the crimes he committed. Trafficking in cocaine is a Class A felony, see § 13A-12-231(12), Ala. Code 1975, and unlawful possession of cocaine is a Class B felony, see § 13A-12-211(b), Ala. Code 1975. The appellant admitted that he had three prior felony convictions. Applying the Habitual Felony Offender Act, the trial court correctly sentenced the appellant to mandatory sentences of life imprisonment without the possibility of parole for his trafficking conviction and life in prison for his unlawful possession convictions. See
§ 13A-5-9(c)(2) and (3), Ala. Code 1975. We "will not disturb a sentence on appeal where the trial court imposes a sentence within the statutory range." Sinkfield v. State, 669 So.2d 1026, 1028
(Ala.Cr.App. 1995).
 V.
The trial court properly fined the appellant $50,000 for his trafficking conviction as required by § 13A-12-231(2)a., Ala. Code 1975. However, it did not impose the fine mandated by § 13A-12-281, Ala. Code 1975, in any of the appellant's cases. The trial court also should have fined the appellant in accordance with § 13A-12-281 for his trafficking conviction and for each of his unlawful distribution convictions. See Snell v. State,715 So.2d 920 (Ala.Cr.App. 1998); Pierson v. State, 677 So.2d 246
(Ala. 1995). Section 13A-12-281, provides:
 "(a) In addition to any disposition and fine authorized by Sections 13A-12-202, 13A-12-203, 13A-12-204, 13A-12-211, 13A-12-212, 13A-12-213, 13A-12-215, or 13A-12-231, . . . every person convicted of, or adjudicated delinquent for, a violation of any offense defined in the sections set forth above, shall be assessed for each such offense an additional penalty fixed at $1,000 for first offenders, and $2,000 for second and subsequent offenders.
 "(b) All penalties provided for in this division shall be in addition to and not in lieu of any fine authorized by law or required to be imposed pursuant to the provision of the controlled substance statutes set forth in subsection (a) of this section."
(Emphasis added.) Therefore, we remand this case to the trial court so that it can impose the mandatory fines in each case. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days of the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
AFFIRMED AS TO CONVICTIONS; REMANDED WITH INSTRUCTIONS FOR IMPOSITION OF FINES.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur. *Page 358